IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY MILLER,                    :
                                   :
            Plaintiff              :
                                   :
     v.                            :   CIVIL NO. 4:CV-15-876
                                   :
WARDEN SPAULDING, ET AL.,          :   (Judge Brann)
                                   :
            Defendants             :

## MEMORANDUM

May 15, 2015

## Background

     This pro se civil rights action was initiated by Anthony Miller, an inmate

presently confined at the Allenwood Federal  Correctional Institution, White Deer,

Pennsylvania (FCI-Allenwood).  Plaintiff has also submitted an in forma pauperis

application.  For the reasons set forth below, Miller' action will be dismissed,

without prejudice, as legally frivolous pursuant to the screening provisions of 28

U.S.C. § 1915.

     Named as Defendants in the Complaint are Regional Director John Doe # 1

and Director for Administrative Remedies John Doe # 2 of the Federal Bureau of

Prisons  (BOP).  The Plaintiff is also proceeding against Warden Spaulding and

Trust Fund Supervisor Fogleman of FCI-Allenwood.  Plaintiff states that he

arrived at FCI-Allenwood during June 2013.  Since his arrival, Miller asserts that

he "must urinate and defecate in front of other men whom are strangers and not

authorized to view my naked body." Doc. 1, ¶ IV(1).  Plaintiff claims that due to a

lack of  privacy dividers in his cell and because inmates are not allowed to cover

the windows in their cells while defecating, he has been placed at risk of sexual

assault.[1]

The Complaint also generally contends that because of unidentified actions

by the Defendants he can only launder his clothes once a week, "must wear soiled

linen and catch MRSA."[2] Id. at (2).  In addition, some of Plaintiff's clothing was

purportedly damaged due to careless handling of laundry procedures.  Miller

requests the installation of self serve washers and dryers so that prisoners can

wash their personal clothing separately from government clothing. Plaintiff seeks

declaratory and injunctive relief.  The Complaint also includes a request that his

matter be certified as a class action.

---

[1]  There is no allegation that Miller was actually the victim of a sexual assault.

[2]  Methicillin Resistant Staphylococcus Aureus (MRSA ) is a highly contagious drug resistant staph infection .  Plaintiff appears to be contending that he developed MRSA because of only being afforded weekly laundering service.  There are no contentions that there was a MRSA outbreak within the inmate population or that Miller's development of MRSA was due to the way his clothes were cleaned.

## Discussion

### Class Certification

Numerous federal courts have recognized that a pro se litigant such as  lacks the capacity to represent the interests of his fellow inmates in a class action. Cahn v. United States, 269 F. Supp.2d 537, 547 (D.N.J. 2003); Caputo v. Fauver, 800 F. Supp 168, 170 (D.N.J.  1992); Collinsgru v. Palmyra Board Of Education, 161 F.3d 225, 232 (3d Cir. 1998)(non-attorneys cannot litigate the rights of others); Osei-Afriye v. Medical College of Pa., 937 F.2d 876, 883 (3d Cir. 1991).  It is plain error to permit a pro se inmate litigant to represent fellow inmates. Whalen v. Wiley, No. 06- 809,  2007 WL 433340 *2  (D.Col. Feb. 1, 2007).

However, a pro se litigant seeking class certification may "continue individually to pursue his claims." Id.  Simply put, a pro se prisoner pursuing a civil rights claim in federal court "must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." Id.; Nilsson v. Coughlin, 670 F. Supp. 1186, 1190 (S.D.N.Y. 1987).

Accordingly, since a pro se litigant cannot represent and protect the interests of a class fairly and adequately, this action will be deemed to be solely filed by Miller.  See Sacaza-Jackson v. Aviles, 2007 WL 38905 *3 (D.N.J. Jan. 4, 2007). Plaintiff's request for class certification will be denied.

**Standard of Review**

28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., that the full filing fee ultimately must be paid (at least in a non-habeas suit) § 1915(e)(2)provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

A district court may rule that process should not be issued if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions.  Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Douris v. Middleton Township, 293 Fed. Appx. 130, 132 (3d Cir. 2008). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

The United States Court of Appeals for the Third Circuit has added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims

that . . . are of little or no weight, value, or importance, not worthy of serious

consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir.

1995).  It also has been determined that "the frivolousness determination is a

discretionary one," and trial courts "are in the best position" to determine when an

indigent litigant's complaint is appropriate for summary dismissal.  Denton, 504

U.S. at 33.

**Personal Involvement**

The two John Doe Defendants are described as being a BOP Regional

Director employed in Philadelphia, Pennsylvania and the BOP's Director of

Administrative Remedies who is employed in Washington, D.C.  The Complaint

indicates that liability exists against those two officials and FCI-Allenwood

Warden Spaulding because they denied his requests for administrative relief.  See

Doc. 1, ¶ IV(1).

Civil rights claims against those two officials, civil rights claims cannot be

premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the

complaint's allegations, to have been personally involved in the events or

occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976);

Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As

5

explained in <u>Rode</u>:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

<u>Rode</u>, 845 F.2d at 1207.

Furthermore, prisoners have no constitutionally protected right to a grievance procedure.  See <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); <u>Speight v. Sims</u>, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance.  See <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).  Simply put, any attempt by Plaintiff to pursue a claim against a prison official based upon the handling of an administrative

grievance or complaint does not support a constitutional claim.  <u>See</u>

<u>also</u> <u>Alexander v. Gennarini</u>, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement

in post-incident grievance process not a basis for § 1983 liability); <u>Pryor-El v.</u>

<u>Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure

does not confer any substantive constitutional rights upon prison inmates, the

prison officials' failure to comply with grievance procedure is not actionable).

Pursuant to the above discussion, Plaintiff's attempt to establish liability

against the two BOP John Doe Defendants and Warden Spaulding based upon

either their respective supervisory capacities or their failure to take action in

response to his administrative grievances is subject to dismissal.

**Right to Privacy**

Plaintiff alleges that his cell lacked dividers which would allow him to use

his cell toilet in private.[3]  This claim appears to be contending at least in part that

Miller's right to privacy was violated.  It is initially noted that there are no facts

presented which could support a claim of personal involvement by FCI-Allenwood

Trust Fund Supervisor Fogleman in this alleged constitutional violation as required

under <u>Rode</u>.

---

[3]    It is noted that there are no claims that the toilet did not function properly, was non-traditional,  or that Plaintiff was forced to share the toilet with a large number of other prisoners.

Second, the United States Constitution "does not mention an explicit right to privacy and the United States Supreme Court has never proclaimed that such a generalized right exists." Doe v. Luzerne County, 660 F.3d 169, 175 (3d Cir. 2011).   However, it has been recognized the Constitution does protect against public disclosure of certain types of highly personal matters.

The United States Supreme Court in Hudson v. Palmer, 468 U.S. 517, 527 (1984),  established that inmates have no privacy rights in their cells.  It has been similarly recognized that incarceration brings about a diminishment of a individual's reasonable expectation of privacy because of penological and security interests.  Doe v. Delie, 257 F.3d 309, 316-17 (3d Cir. 2001); Davis v. Butcher, 853 F.2d 718, 720 (9th Cir. 1988).

Institutional security requires that prison officials be able monitor the activities of prisoners while they are in their cells.  Requiring prisons to create an area within each individual cell which could not be visually monitored by correctional staff would clearly pose an obvious threat to security and the safety of both prison staff and prisoners.   Based upon an application of the above decisions and the obvious security interests at issue,  Plaintiff's assertion that the lack of privacy barriers surrounding the toilet area of his cell violated his right to privacy does not set forth a viable claim of violation of his right to privacy.   For those

same considerations, the claim that the lack of such privacy barriers constitutes a

failure to protect Miller's safety is likewise meritless especially since the

imposition of such a barrier could conceivably pose a threat to the prisoner's safety

in that it could permit a cellmate to undertake an assault without detection.

**Conditions of Confinement**

Plaintiff next contends that he was subjected to unconstitutional conditions

of confinement because he could only launder his clothes once a week which

caused him to wear soiled linen and catch MRSA and also because there were no

privacy barriers surrounding the toilet area of his cell.[4]  Again, it is noted that there

are no facts asserted showing that  FCI-Allenwood Trust Fund Supervisor

Fogleman was personally involved in any actions relating to these alleged

unconstitutional conditions.

The Eighth Amendment's prohibition of cruel and unusual punishment

imposes duties on prison officials to provide prisoners with the basic necessities of

---

[4]    There is also a claim that careless laundering  caused damage to Plaintiff's
clothes.  However, mere negligent conduct does not expose a prison official to
liability under § 1983.  Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).
    Moreover, there is no indication that any of the named Defendants were
personally involved in the alleged negligent laundering as required under Rode.  In
addition, a civil rights claim cannot be brought when a prisoner has an adequate post-
deprivation remedy under state law for any loss suffered to his or her property.
Hudson , 468 U.S. at 532-533.  Based upon those consideration, the careless
laundering claim will also be dismissed.

life, such as food, clothing, shelter, sanitation, medical care and personal safety.

See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S.

25, 31 (1993).

A condition of confinement, in order to implicate the Eighth Amendment,

must be so reprehensible as to be deemed inhumane under contemporary standards

or one that deprives an inmate of minimal civilized measure of the necessities of

life. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S.

294, 298 (1991)."[5]  Prison conditions may amount to cruel and unusual punishment

if they cause "unquestioned and serious deprivations of basic human needs ... [that]

deprive inmates of the minimal civilized measure of life's necessities." Tillman v.

Lebanon County Correctional Facility, 221 F.3d 410, 417-18  (3d Cir. 2000).


Courts have stressed that the duration of the complainant's exposure to the

alleged unconstitutional conditions and the "totality of the circumstances" are

critical to a finding of cruel and inhumane treatment.  In addition, the inmate must

---

[5]     Under Farmer, deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety.  Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

Based upon an application of the above standards, the lack of privacy dividers in the Plaintiff's cell and the absence of self serve clothes washers and dryers in the prison do not set forth viable conditions of confinement claims as they do not constitute a serious deprivation of a basic human need.

The Plaintiff also has not set forth any facts explaining when and how he contacted MRSA. His vague contention that more frequent laundering would have prevented his purported development of MRSA is insufficient to set forth a viable claim. The general allegation that prison officials only provided Miller with weekly laundering services does not by itself allege the type of cruel and inhumane treatment and serious deprivation of a basic human need required for a viable allegation of unconstitutional conditions of confinement. See Gibson v. Lynch, 652 F.2d 34, 352 (3d cir. 1981)(weekly laundering service provided to prisoner did not violate the Eighth Amendment).

**Conclusion**

Since Miller's civil rights complaint is "based on an indisputably meritless legal theory," it will be dismissed, without prejudice, as legally frivolous. Wilson,

878 F.2d at 774.  Finally, in light of the dismissal of this action without prejudice,

Plaintiff's motion seeking appointment of counsel (Doc. 5) will be dismissed as

moot.[6]   An appropriate Order will enter.


BY THE COURT:


  s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[6]      If Plaintiff can present facts showing that any of the named Defendants were aware of the presence of an existing MRSA problem at the prison which required as a remedial measure the provision of more frequent laundering opportunities and failed to undertake such action, he can seek reconsideration of this decision within fourteen (14) days of the date of this Memorandum.